My name is Richard Millo, and I represent the 120 plaintiffs in the Anderson v. Britt U.W. case. First, I would just, as general background, the defendants in this case, after this appeal was completed, the briefing, Mr. Armitage, who was centrally at e-planning, pled guilty and got 10 years in the State prison. Mr. Koenig, his confederate at AREI, went to trial and was convicted and was sentenced to 42 years in State prison. But this is a serious problem. What does that have to do with the issues at hand? Okay. Because I'll tie it up. Okay. In interpreting the insurance policy, one looks first, as the Court knows, at the insuring clause. And it is, under California law, to be interpreted broadly to meet the expectations of the insured. That insuring clause speaks about individual acts, which are defined as wrongful acts. And it focuses on Security Act violations, 33 and 34 Act, State court securities fraud, breaches of fiduciary duty, acts that are taken not on behalf of the customer, but taken for the purpose of defrauding the customer and of enhancing the individual who engages in the act. When you go to a stock brokerage firm, you want to know they're insured. And so this broad, broadly interpreted insurance clause says, yes, if one of our principles acts in a meretricious fashion, there will be coverage. Now, Lloyds of London has, in this partial professional exclusion, the argument that anything that a professional does in the course of sale or as a result of sale is excluded. Now, the insurance law, of course, as the Court knows, says that an exclusion should not render the policy a nullity. It should not swallow the rule. Well, it doesn't swallow it. It certainly shrinks it to small, but it doesn't swallow it. Okay. And when asked in his opinion, in the second opinion written by the Court on September 28th, the Court said that it could not tell whether the professional services exclusion implicates individual acts as defined as errors, omissions, misstatements, misleading statements, or neglect of duty. I don't know what that means, but it seems to me that that's just a minute, please. You're not listening to any of the questions or statements. I apologize for the delay. There is a category of securities law violations that could be committed by the insured individuals on behalf of the company itself, not on behalf of other people, right? Yes, but there is a category. True. So it doesn't swallow it up. It may shrink it a lot, but it doesn't swallow it up. And forgive me, Your Honor, if the Court thought I was not listening to the questions. I want to make that clear. The exclusion, though, speaks about actions, professional actions on behalf of third parties. We allege in paragraphs 97 through 99 that there was an active Ponzi scheme. That's a different point. I was talking about your point that this eliminates, that this creates, makes this a nullity. And if you want to give up on that point, it's fine, but I don't see it. Well, if you broadly read the words, in connection with, the fact that Mr. Armitage sold a security, even if he kept the money, if the money never went to anyone but went in his own pocket, you would That may be, but it still doesn't make a nullity with respect to a different class of circumstances in which he was doing something not on behalf of any other entity and purpose, but on behalf of the company itself. Okay. So my argument would be that the exclusion, which excludes acts of professional service that are rendered on behalf of a third party, does not apply to our case, because under the facts alleged in our case, the actions that Armitage took were not for the purpose of his customers, but for his own purpose to steal the money, commingle the money, and enrich himself. And therefore, the insuring clause, which expressly holds him responsible, and therefore e-planning responsible, should apply and there should be coverage. So your argument is that everything is covered, not just you're not making a temporal limitation, you're saying that everything is covered. Yes. Everything that has to do with wrongful acts, criminal acts, breaches of fiduciary duty because they are not rendered on behalf of a third party. And aren't you creating a nullity out of the exclusionary clause because nothing is excluded? No. I'm allowing for, for example, as the Court cited earlier, perhaps an argument about backdating of options or something that doesn't involve the customer. It would involve an individual working for e-planning who gets sued because he enriched himself by backdating a document so that he could get more e-planning options. But when you talk about a customer who goes in for the purpose of making a legitimate investment and that individual he meets, under color of authority, steals his money, he doesn't get the benefit of an exclusion because it's not a professional service that he's rendering. As I indicated in my brief, Your Honor, and I know the Court has read my brief, I cited many cases in which the Court talked about someone going to, for example, a doctor in the Moore Clinic case for treatment. That individual was raped on the premises, raped by a professional. What that professional did was not a professional service. What that. Yes, but what if he provided bad medical care? Then in my view, the exclusion would cover. Right. And this is providing bad. No, this is. Your example is an example of providing bad professional services of sale of securities. Not bad. He didn't sell them for the purpose of rendering an asset to the individual. He commingled and stole the funds. That's not a professional service. We have the employer's reinsurance case which says intentional conduct such as misrepresentation of facts by an insurance agent is not covered by professional services exclusion. We cited Jenkins v. St. Paul Fire. False claims by professionals are not professional services. A Ponzi scheme using the money of people who simply walk through the door doesn't render the taking of that money the rendering of a professional service. I want to. Of course, the burden of proof is on the plaintiff to establish coverage. And I think there's no question that these acts are covered by the insuring clause. The burden of proof on the application of the exclusion is on the insurer, the insurance company, to show that this clause is not only applied, but that it's not ambiguous. And I believe that in his own opinion, Judge Seaborg said that he could not tell the meets and bounds of the exclusion. So I would suggest under Civil Code Section 1654 that ambiguity by a drafter is interpreted against them. That's AUI Insurance v. Superior Court, a California Supreme Court case cited in our brief. And then as the judge has asked earlier, Mr. Donaldson, what do you make of the issue partial professional services exclusion? As I put in my brief, there's no guidance given to the insured as to what partial means. There's not another exclusion in the policy, and you look at the policy as a whole that defines partial or professional service, but where the modifier partial applies. It's only here. So for the insured who's buying the policy and even sees it, he would wonder what it applies to. So that's basically my argument, Your Honor, that the mere fact that someone is a professional, clothed in authority, and transacts with a customer doesn't mean that what he did was for the benefit of the customer. This is not a bad investment gone wrong. This is a Ponzi scheme, as alleged in our complaint. And $400 million was lost. Is there a California case that sort of adopted your theory? Which theory, sir? A California case. That adopts the theory? Your theory that you're suggesting. Right. Well, the language of the exclusion itself says for the benefit of. No, no. I'm talking about a — can you point me to a case that sort of applied your theory? A California court of appeal opinion or a California Supreme Court opinion? You cite a lot of cases from out of State. Yes, I do. Lots of cases. But I'm curious what — Okay. Is it beyond the general principles of insurance interpretation, you know, how you interpret insurance contracts, that California is well known for? Has there been one that you'd like us to make sure we consider? Well, I looked at, in formulating my argument, whether or not the exclusion is narrowly interpreted. And there's a number of cases that I've read. If one reads the language of the exception that says for the benefit of the customer and then you look at the State Farm v. Partridge case, which we cite, that says a rising out of and an exclusion should be narrowly interpreted, and because of the broad grant of the insurance clause. So the answer is no. That's a California Supreme Court. The tie to this question is no. Well, one doesn't come to mind right now, Your Honor, but I have to look at my brief. So your argument is that we should interpret the clause to not cover, what, criminal acts or malfeasance? Yes. The insuring clause about securities act violations, sale by fraud, State court actions that cover fraud, which, frankly, in an insurance policy is normally not covered. But this policy provides for it. And the expectation of the insurer is that, yes, they're getting coverage if one of their officers or directors engages in active fraud. And active fraud is not for the benefit of the client. I see my time is up. Okay. Thank you. Thank you very much, Your Honor. I apologize again, Your Honor, for interrupting. You can make room for yourself up here at the table. Good morning, Your Honors. Again, Michael Fox on behalf of BRIT. I don't want to rehash anything which I argued. No, you can just focus on his argument. We'd appreciate that. Absolutely. And I would just go to point out, as you noted, there doesn't appear to be any case which supports their broad reading of the case law to exclude application of the exclusion here. We have a clear situation where the acts alleged in the underlying claim, which is their second amended complaint filed, their second amended complaint filed in Marin County, alleged the sale of securities to their, the sale of investments to their clients, to the plaintiffs, and acts in connection with which led to their injuries and losses. It's clearly covered by or clearly excluded by the exclusion here because those actions were in connection with the professional services. As the district court noted, you don't get to commingling. You don't get to the Ponzi scheme. You don't get to any of the acts which they have read. Well, what about the outset of the transaction with the customer, the investor? It's just all fraudulent. And they know it. The investor knows it? No, the sales rep or the agent. Well, again, the underlying claim. Everyone just knows that it's all, you know, the customer doesn't know. It's just. If we're talking in those hypotheticals, Your Honor, we're getting into realms in which there would be no coverage for intentional acts and fraudulent activity like that, which we specifically didn't bring up because of the factual nature which you would get into with exclusions, which, by the way, are in this policy. Those aren't here because what we thought was an easier, straightforward, focused determination for Britt, the district court, and frankly, this panel. Well, I'm just talking about the. There may be other bases for, you know, that would apply, other exclusions that would apply. I'm just asking for purposes of this particular exclusion. But again. If the whole thing was just fraudulent, the whole thing was just outright fraud at the very beginning. And I'm not going to get into that in this case.   I'm just asking for a definition of fraudulent act of error or omission in connection with the professional services. Sotomayor, a bridge in Mexico, a gold mine in Mexico. There was no gold mine in Mexico. Again, the claim which they're making is for the sale, the breach of fiduciary duty, the trust, everything that relates to professional service. But the question is that. And I'm not going to get into that in this case.   And I'm not going to get into that in this case. Kagan. Did they do anything for the benefit of third parties? Surely that act was for the benefit, trying to convince the plaintiffs to secure returns on their investments. I agree there may have been a dual in the scenario which Your Honor is raising. There may have been a dual purpose. Well, what's dual about it? What's dual about it is one is you need to. Why is it any different than if they went to their house and took the same amount of money? If they went to their house and they stole a million dollars, that wouldn't be for the benefit of the people, right? Surely. They would never in that instance have. And if they said to them, I'm going to sell you a gold mine in Mexico, but there was no gold mine in Mexico and they took the same million dollars, what's the difference? The difference is the nature with which they're going to the client and trying to make a sale. It's different than a burglary where you're walking into the house and just stealing property. Well, of course it's different, but it's different in terms of the language of this exclusion. But in connection. But looking at the exclusion here, you are focusing on conduct which e-planning and Guidi, perhaps Armitage, are alleged to have conducted in connection with their sale of the securities to the plaintiffs. And again, there's the act of selling. But that's not what it says. It says for the benefit of the plaintiffs. Well, the act which they're doing is for their benefit. And indeed, the act of trying to sell them an act of sale, selling for the purposes of getting returns, is for their benefit. I certainly understand the distinction which the plaintiffs are trying to make. But again, those acts, the fraud, the alleged fraud, the alleged commingling, the alleged mismanagement of any of those funds doesn't occur unless they've built that trust with the plaintiffs. And secured their investments as part of their professional advisory services. I mean, it's interesting, because it doesn't say on behalf of any other entity. It says for the benefit of. You're essentially reading for the benefit of to mean on behalf of. Well, for the benefit of those, yeah, on behalf of those plaintiffs. Without regard to whether there's any benefit, actually. Or even any potential benefit. Well, there is a potential benefit, meaning the act which they were doing was trying to secure returns for them. I agree. But my hypothetical, they were absolutely not trying to. There was no chance they were going to get any returns from them. They had no intention of obtaining any returns from them. They were just stealing their money. They were just doing it differently than walking into their house. It may be. But again, the claim, second amended complaint which we're looking at, which is the claim which was made is a breach of fiduciary duty, a breach of trust. It focuses on the nature of the representations that were made in that sale. And whether those acts would be covered under the policy is what we're talking about here. And those acts clearly were in connection with the partial, with the professional services, the e-planning, GWEDI, or rendering to the plaintiffs. We have to read the allegations that are underlying state court complaint, you know, with the eye towards is there a potential for coverage. And indeed, that's what it did when it denied coverage. And it's what the district court twice did. In fact, it went to the plaintiffs after granting the initial motion to dismiss and said, where is this conduct which you allege which is outside of the partial professional services exclusion? And they came up with none. So you're right, Your Honor. It's looking at that second amended complaint and looking at whether there's coverage under this policy based on those allegations that were made by the plaintiffs in that action. That's the specific nature of the focus here. And the cases which they've relied upon to try and steer the court otherwise really don't apply. They're not the same factual situation. Two cases in particular, they were cited in their reply brief, Tower Insurance and Geostar, don't compel a different result. In fact, if you look at Geostar, a case that two of the groups of plaintiffs relied upon, the business that was at issue there was an energy business. And what that company was doing was selling energy interests. And then it moved on to sell mayor lease interests. And there was a partial professional services exclusion, but the nature of that company, the business with which it was involved, had nothing to do with professional services. And so that's why the court in that case said the professional services exclusion isn't going to apply to the fraud in connection with the mayor lease sales. I would also point to Piper Jaffray. This is another case which the Anderson plaintiffs had made much of. And this held, in one specific part of the opinion which Britt also relies on, that plaintiffs' claims that deficient accounting procedures and inadequate or false reporting were business activities and not professional services. The court found that was not convincing. While the underlying complaints were scattered with references, the claims were unmistakably arose from the provision of the investment services, which, Your Honor, that's the point which I was making when you were asking your hypotheticals about the divergent intent that the tortfeasors may have had here. It still is in connection with the investment services and advisory services that the defendants were offering to the plaintiffs, which gave rise to the underlying complaint for which we're here to determine whether there's coverage. But, Counsel, how do you still tie in the last clause of the exclusion? It says, on behalf of the company, for the benefit of any other entity or person. How could this activity possibly be for the benefit of any other entity or person? Again, Your Honor, if we look at what was alleged in the second amended complaint, it's difficult to find any specific e-planning or GWEDI-specific related activities which aren't related to or don't arise out of the investment advice and sales. But you keep wondering. I mean, I think it's actually an answer to these questions, but you're not giving it, because you're you keep focusing on the services and the connection, and we're asking you about for the benefit of. So let's stick to that, okay? Surely. And, again, even if the and this was something which the trial court noted as well, which Judge Seaborg noted, which is that you can have for the benefit of the plaintiffs, and you can also have for the benefit of the alleged tort feasors or for the benefit of the company, but the fact that it's for both doesn't foreclose application of the exclusion. Okay. But it's still the question. I mean, my suspicion is that for the benefit means essentially in the name of or, you take it to mean the benefit of in the sense for their good. It's not for their good in any sense at all, right? It's on their behalf, which is what I said when you were first asking me the question. No, it's what I said. But, anyway, go ahead. But I agreed with Your Honor in the point that it was on behalf of. That's what the reading of the clause may be. But that's not really where the interpretation falls down here. Because either if it's on behalf of, for their benefit, if it's still in connection with that professional advisory services which they were rendering, and this goes to Your Honor's question, you still have both for the benefit perhaps of the company or the individuals involved, but you also have on behalf of for the benefit, maybe perhaps not for the good, but for what they were seeking, investment returns for the plaintiffs who were seeking professional investment advice and services. So you're telling me that the plaintiffs seek services from your clients or from e-planning. And e-planning develops its relationship and provides these services and takes their money and seeks return allegedly on that money and then engages in acts such as the extra loans, the diverting money, the fiduciary breaches, and that's on behalf of the client? No. It's in connection with. And this is why you have to consider the entire alleged act and alleged misappropriation and where it ties back to. If it ties into the advisory services, that act is still on behalf of the company for the benefit. And how does that tie into the advisory services? You took their money to invest in an instrument and then allegedly, without disclosing to them, you took money out of that investment instrument for other purposes. How is that for the benefit of the investors? That specific act may not be for the benefit of the investors, but it's in connection with the act which was performed for their benefit, which was offering securities to them, gaining their trust, offering them advice on where to place the services, and as alleged in some, it's sometimes alleged, ensuring that it would deliver a proper return. As the district court noted, you don't get to that stage unless you were also engaged initially in the stage of securing the investment funds at the outset. And that goes to the temporal point, which Your Honors were addressing. Is for the benefit of? Is that what the phrase is, for the benefit of? Is that ambiguous? I don't think so, Your Honor. And no one has really raised the issue of whether that's the point. Well, I'm just asking you. For our point, I don't think Brit nor the district court had any issue with determining what that language meant, and there's been no question raised by any of the appellants that that phrase leads to any ambiguity or difficulty with applying the exclusion. The point here has been with other language in the exclusion, which we've thoroughly addressed, I think. I'm just looking at the second amended complaint that was filed in the Marin Superior Court. Yes, Your Honor. They did have cause of action for fraud and deceit against all defendants. And it incorporated the allegations from the other claims. Yes, it did. But it did.  but a fraud. But again, everything that they did. Was in connection with. I know that's what you'll come back to. But I'm not trying to be cute about that, Your Honor. No, no, I understand. And my point is that if you bury the fraud cause of action later in the complaint after you've alleged what all the conduct is, you're necessarily following the temporal timeline, which the complaint did, which is where the funds come from, what was the nature by which the funds were secured, what professional services were rendered in that vein, towards getting towards the later actions, which perhaps may have been for the benefit of others, but they were in connection with the initial sale and advisory. Okay. I got your point. Your time is just about up. Just again, Your Honor, and I would make a point here only because the Anderson plaintiffs raised it in their reply brief. I think it's something which we also addressed with regard to the Ambrosio plaintiffs. And that's simply that discovery is not necessary. They make much of the fact that this was dismissed too early. We have the second amended complaint, which was their claim. We compare it to the policy. Well, does whether discovery is necessary determine whether the phrasing is ambiguous or not ambiguous? It does if there's an ambiguity. But again, as the district court determined, there's nothing ambiguous. But the district court determined it's not pertinent, is it? No. It's not a fact question. If it were a fact question, then they would have to have discovery. If there was an ambiguity. But again, the discovery would have to go towards extrinsic evidence, which they allege to exist, which would give meaning to those terms, which are ambiguous. But there's nothing ambiguous about the terms of this policy, and there's nothing ambiguous about the terms of the policy. Sotomayor, did we spend a fair amount of time talking about for the benefit of and musing over what various things it could mean? But again, we didn't muse over what it could mean in relation to the nature of the claims which we have here. We've talked a lot about other hypotheticals and we've talked about other acts which don't arise in these claims, and that's also a point which Judge Seaborg made. Let's look at what the underlying claims were and let's determine whether they're precluded by this policy. Thank you, Your Honor.  Okay. You had two minutes if you wanted to use it. Good? All right. Okay, thank you.
judges: Morris, Paez, Berzon